Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**JEFFREY A. BOGGESS**
Jeffrey A. Boggess, P.C.
Greencastle, Indiana

ATTORNEY FOR APPELLEE:

**LAKSHMI REDDY**
Reddy Law Firm
Terre Haute, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DAVID BUCHANAN,                          )
                                         )
    Appellant-Petitioner,            )
                                         )
      vs.                          )   No.  60A01-1304-DR-189
                                         )
CAROL BUCHANAN,                          )
                                         )
    Appellee-Respondent.             )

APPEAL FROM THE OWEN CIRCUIT COURT
The Honorable Lori Thatcher Quillen, Judge
Cause No. 60C01-1102-DR-24

**February 17, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

David Buchanan ("Husband") appeals the trial court's Decree of Dissolution dissolving his marriage to Carol Buchanan ("Wife"). Husband raises three issues for our review which we consolidate and restate as two: 1) whether the trial court abused its discretion in its property division; and 2) whether the trial court abused its discretion in valuing certain property. Concluding the trial court did not abuse its discretion in either respect, we affirm.

## Facts and Procedural History

Husband and Wife were married on May 30, 1991. In June 2003, they separated, and Wife moved to Kentucky, where she has resided since. At the time of separation, Wife was receiving unemployment and Husband was working as a construction supervisor. They each had a retirement account, and Wife had some stock in UPS, her former employer. The parties owned two parcels of real estate: the marital residence in Owen County and a rental property in Marion County. They also owned several vehicles including a boat. Wife took two of the vehicles, $5,000 from a joint savings account, and various items of personal property with her to Kentucky. Husband remained in the marital residence and paid the debt obligations on the real estate and the vehicles. Husband filed a Petition for Dissolution on February 10, 2011.

Following a hearing, the trial court issued the following Decree of Dissolution:

FINDINGS OF FACT

* * *

3.  Husband and Wife have been physically separated since June of 2003, but the Petition for Dissolution of Marriage was not filed by Husband until February 10, 2011.

* * *

6.  The parties have previously divided some of the household goods and items of personal property.

7.  The parties have separated their bank accounts as of 2003.

* * *

9.  The assets to be included in the marital pot are as follows:
    i.  Real Estate:  [marital residence]; [rental property];
    ii.  Vehicles:  1996 Dodge pickup; 2001 Hyunda [sic] Tiburon, 2001 Dodge pickup, and 1989 Lund Boat;
    iii.  Personal Property:  Household goods and furnishings and cemetary [sic] plot;
    iv.  Pension/Retirement:  Husband's 401(K) and Wife's 401(K);
    v.  Bank Accounts:  National City Bank

10.  The debts to be included in the marital pot are as follows:
    i.  Mortgages on Real Estate listed in paragraph 9(i);

11.  The assets and debts should be divided equally between Husband and Wife.

12.  All of the assets and debts shall be valued either on the date of separation which was June 2003 or on the date of the filing of the Petition for Dissolution on February 10, 2011.

* * *

CONCLUSIONS OF LAW

* * *

5.  Although the parties physically separated in June of 2003, and that date shall be used for determining what assets and debts are included within the marital pot, the date of valuation of all property, except Husband's 401(k), shall be February 10, 2011, the date of filing of the Petition for Dissolution of Marriage. . . .

6.  Wife shall receive, as her sole and separate property, the UPS stock, Hyundai Tiburon, the $5000 she took with her to Kentucky, her 401(k), the 1996 Dodge Truck, [and] the personal property in her possession . . . .

7.  Husband shall receive, as his sole and separate property, the [marital residence], [his] 401(k), the Lund boat, the burial plot at New Maysville and the personal property currently in his possession . . . .

8.  Husband shall keep the former marital residence . . . and it is assigned a fair market value of $63,000 and a debt of $34,645.  Wife's equitable share in the marital residence is $14,177.50.  Husband shall be responsible for any other

3

debt remaining on the home. While Husband continued to make payments on the marital residence . . ., he also continued to live in the home and enjoyed the value of the property and there is no basis for him to receive any credit for those payments.

* * *

11. The [rental property] shall be sold by a realtor agreed upon by the parties for a price above the debt obligations. It appears that as of February 10, 2011, the debt was $34,556. Husband shall be responsible for continuing to make the mortgage payments and the parties shall equally split the net proceeds. Husband shall be entitled to any credit for mortgage payments made since February 10, 2011 and until the real estate is sold and shall maintain and preserve the property.

12. Wife shall keep the 1996 Dodge pickup truck and Husband shall keep the 2001 Dodge pickup truck and they shall be considered an even exchange with equal values based upon the testimony provided.

13. Wife shall keep the 2001 Hyundai Tiburon and Husband shall keep the 1989 Lund Boat and they shall each be given a value of $2500 for an even exchange based upon the testimony provided, blue book values, and loan balances. The Husband is not entitled to any credit for the $14,000 he paid towards the outstanding debt on the Tiburon prior to the Husband filing for dissolution.

14. The parties each have or had their own 401(k) plans during the marriage. Wife expended her 401(k) of $19,249.00 and her stock of $1495.00 to support herself as she had no other source of income and there were no funds remaining at the time the Petition for Dissolution was filed. The Husband still has his . . . 401(k) and it is unclear of the value of Husband's 401(k) on the date of filing the Petition for Dissolution. The Wife request [sic] based upon Husband's provided discovery that the Court place a value of $87,299.41 on [H]usband's 401(k). The Husband requests the court use a value of $28,130 the amount shown as of June 2003. The Court concludes that valuing the pension at the higher amount as suggested by Wife would result in an unfair windfall to the Wife. The Court in making its determination of value considered all of the following:

    i. The parties initially separated all of their bank accounts and cash in 2003. The pension of each party were [sic] substantially similar in value in 2003. . . .

    ii. The Court, also in its attempt to reach a fair and equitable division, has determined that since the Wife cashed out her pension valuing $19,249 and stock at $1495 in 2003, those assets no longer existed in February 2011 and therefore would not count as assets in determining equity calculations against the Wife. Wife shall be entitled to receive an amount from Husband's 401(k) to provide her an equitable share in

4

the marital pot after factoring in the $5000 that Wife kept from the National City Bank account.

15. A judgment shall be entered for Wife and against Husband in the amount of $25,867.50 to equalize the equities. The net value of the property Husband took $59,235. The net value of the property Wife took $7500. The difference between these two figures is $51,735. One half of $51,735 equals the payment of $25,867.50. . . .

* * *

17. The marriage of the parties is hereby now dissolved.

Appendix of Appellant at 5-9. Husband now appeals.

## Discussion and Decision

## I. Standard of Review

The trial court issued findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). Our standard of review is well-settled: we will not set aside the findings or judgment unless they are clearly erroneous. T.R. 52(A). Findings are clearly erroneous when the record contains no facts to support them either directly or by inference. Johnson v. Wysocki, 990 N.E.2d 456, 460 (Ind. 2013). We neither reweigh the evidence nor judge the credibility of the witnesses, but view the evidence most favorably to the judgment. Best v. Best, 941 N.E.2d 499, 502 (Ind. 2011). A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. Johnson, 990 N.E.2d at 460. To make a determination that a finding or conclusion is clearly erroneous, our review must leave us with the firm conviction that a mistake has been made. Id.

## II. Property Division

Indiana Code sections 31-15-7-4 and 31-15-7-5 govern disposition of marital assets in a dissolution proceeding. Indiana Code section 31-15-7-4(a) provides that the trial court

5

shall divide the parties' property whether owned by each of them prior to the marriage, acquired by either of them after the marriage but before their final separation, or acquired by their joint efforts. "Final separation" is defined as the date the petition for dissolution is filed. Ind. Code § 31-9-2-46. It is presumed an equal division of marital property is just and reasonable, but that presumption may be rebutted by evidence of several statutory factors such as contribution to the acquisition of property, the earning ability and economic circumstances of the parties, and the conduct of the parties during the marriage with respect to the disposition or dissipation of property. Ind. Code § 31-15-7-5.

The party challenging a property division must overcome a strong presumption that the court complied with the statute and considered the evidence on each of the statutory factors. Luttrell v. Luttrell, 994 N.E.2d 298, 301 (Ind. Ct. App. 2013). Assuming the trial court's findings are not erroneous, when reviewing a claim of improper division of marital property, the issue is not whether the trial court may have reasonably divided property in another way, but whether the division the trial court made constitutes an abuse of discretion. Grimes v. Grimes, 722 N.E.2d 374, 376-77 (Ind. Ct. App. 2000), trans. denied. We will reverse a property distribution only if there is no rational basis for the award—that is, if the result reached is clearly against the logic and effect of the facts and circumstances before the court, including the reasonable inferences to be drawn therefrom. Luttrell, 994 N.E.2d at 301. We will also reverse where the trial court has misinterpreted the law or has disregarded evidence of statutory factors. Id.

Husband contends that in equally dividing the marital property, the trial court erred in failing to consider that for several years in advance of filing for dissolution, the parties were living apart and conducting their affairs separately. Specifically, he contends the trial court erred in failing to give him any credit for solely paying the joint debt the parties had when they physically separated, including mortgages on the parties' real property and loans on various vehicles, and in failing to consider Wife's "dissipation" of certain marital assets she took with her. "The date the parties no longer resided together is a fact which the court can, in its discretion, consider in its just and reasonable division of property." Hunter v. Hunter, 498 N.E.2d 1278, 1295 (Ind. Ct. App. 1986).

We disagree with Husband's assertion that the trial court "fail[ed] to account for the parties['] 8 year separation in its property distribution." Brief of Appellant at 5. Although it was not required to do so, the trial court determined the date of the parties' physical separation was the appropriate date for closing the marital pot given that after that date, the parties no longer resided together or conducted their affairs as husband and wife. See Ind. Code § 31-15-7-4(a)(2) (defining marital property to include property "acquired by either spouse in his or her own right . . . after the marriage; and . . . before final separation of the parties . . . .") (emphasis added). Therefore the trial court did account for the lengthy separation in crafting the property division. It was not an abuse of discretion for the trial court to determine that Husband's payment of debts was a voluntary undertaking because he never asked Wife to contribute toward those debts and did not file for dissolution in the intervening years.

The assets Husband contends Wife dissipated include $5,000 in cash, her 401(k), and UPS stock.[1] Dissipation of assets is one of the statutory factors that may be used to rebut the presumption of an equal division of property being just and reasonable. In re Marriage of Coyle, 671 N.E.2d 938, 942 (Ind. Ct. App. 1996). "Waste and misuse are the hallmarks of dissipation. Our legislature intended that the term carry its common meaning denoting 'foolish' or 'aimless' spending. Dissipation has also been described as the frivolous, unjustified spending of marital assets . . . ." Troyer v. Troyer, 987 N.E.2d 1130, 1140 (Ind. Ct. App. 2013) (quoting In re Marriage of Coyle, 671 N.E.2d at 943), trans. denied. Dissipation does not include the use of marital property to meet routine financial obligations. Hardebeck v. Hardebeck, 917 N.E.2d 694, 700 (Ind. Ct. App. 2009). Wife testified that she was unemployed when she moved to Kentucky and that she cashed out her 401(k) – with Husband's consent – to support herself until she found a job. There is no evidence that Wife frivolously spent those funds, and the trial court did not abuse its discretion in refusing to find Wife's use of that money was dissipation when dividing the property. In short, Husband has not met his burden of showing the trial court's division of marital property as between parties who had long ago separated their property and their lives without the benefit of formal legal proceedings was anything other than just and reasonable.

### III. Valuation of Property

The trial court has broad discretion in determining the value of property in a dissolution action, and its valuation will not be disturbed absent an abuse of discretion.

---

[1] Wife disputed that she had taken $5,000 from the parties' savings account when she went to Kentucky and testified that she still had the UPS stock at the time of the hearing.

Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). The trial court may choose to value the marital assets as of any date between the date of filing the dissolution petition and the date of the final hearing, and it does not have to value every asset as of the same date. McGrath v. McGrath, 948 N.E.2d 1185, 1187 (Ind. Ct. App. 2011). In accordance with this rule, the trial court appropriately determined that the parties' property would be valued as of the date of final separation, February 10, 2011.[2]

Husband specifically challenges the trial court's findings regarding the valuation of the parties' vehicles. With respect to the parties' two Dodge trucks, the trial court did not assign a specific dollar amount to either, but determined that they were "an even exchange with equal values based upon the testimony provided." App. of Appellant at 8. Husband contends this finding was erroneous because the 2001 Dodge with which he was left was totaled shortly after the parties' physical separation, and the 1996 Dodge which Wife took with her was valued at approximately $7,000: "[e]quating a $7,000 asset with an asset that has no value is clearly erroneous." Br. of Appellant at 8. The testimony, however, was that Husband "figured" the 1996 Dodge was worth "around seven thousand, 7,500 at the time she took it." Transcript at 12. There was no testimony about its value in 2011, and little testimony about its purchase price, but Husband testified he had purchased the 2001 truck for $45,000, and Wife testified they had probably paid "pretty close to the same amount" for the 1996 truck. Tr. at 55. If the truck had depreciated to $7,000 in seven years, it was not clearly

---

[2] Most of Husband's testimony and exhibits at trial were geared toward valuing the property as of the parties' physical separation in 2003. As the trial court noted, this would be an inappropriate date on which to value the marital property; moreover, it would most likely have been a difficult endeavor even if allowed given the length of the parties' separation.

erroneous for the trial court to determine that it was worth very little, if anything, eight years later. Whether the 2001 truck should have been included in the marital pot when it no longer existed in 2011 or simply left out of the calculation altogether, inferences from the evidence support the trial court's finding that the 1996 truck also had negligible worth on the valuation date.

With respect to the Hyundai and the boat, the trial court assigned a value of $2,500 with no debt to each "for an even exchange based upon the testimony provided, blue book values, and loan balances." App. of Appellant at 8. Husband contends this finding is erroneous because he paid the debt on both the Hyundai and the boat, and assigning no debt to them fails to give him credit for those payments. As noted above, Husband voluntarily continued to pay the parties' debts. In fact, he testified that he did not ask Wife to bring the Hyundai back to him from Kentucky or to take over making the payments because "paying for the [Hyundai] Tiburon was like paying it forward." Tr. at 27. As for the boat, Husband had the boat in his sole possession, did not ask Wife to contribute toward the loan payments or take legal steps to allocate their debts, and presumably had the sole use and enjoyment of the boat during the parties' pre-filing separation. We find no abuse of discretion in the trial court's valuation of the parties' assets.

Conclusion[3]

The trial court did not abuse its discretion in equally dividing the marital property or in valuing that property. The Decree of Dissolution is therefore affirmed.

Affirmed.

BARNES, J., and BROWN, J., concur.

---

[3] Wife contends Husband should be ordered to pay her appellate attorney fees, without citing any support for her request. Although this court may assess damages if an appeal is frivolous or in bad faith, see Ind. Appellate Rule 66(E), Wife has not alleged that Husband's appeal is frivolous or in bad faith. Rather, she alleges "Husband should be ordered to pay Wife's attorney fees in this appeal so that she is able to receive the full benefit of the amount awarded to her by the Trial Court." Brief of Appellee at 12. Our discretion to award attorney fees under this rule is limited "to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." Thacker v. Wentzel, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003). It is not intended to "punish mere lack of merit, but something more egregious." Helmuth v. Distance Learning Sys. Ind., Inc., 837 N.E.2d 1085, 1094 (Ind. Ct. App. 2005). Although Husband has not prevailed in this appeal, we can discern no basis for awarding attorney fees to Wife.